May it please the Court, my name is Nelson Ebal, I represent David Davalos, Sr. If the Court has the record excerpts available, I was going to start by identifying some pertinent language on record excerpt number four. I can read it also. The last page of record excerpt number four, which is the judgment, which includes a forfeiture order. If you would just kind of try to stand closer to the mic and keep your voice up, please. Yes, Your Honor. The forfeiture order reads, the defendant is ordered to forfeit the following money judgment to the United States, colon, a sum of money equal to $1,794,000, which represents the proceeds from and the value of the property involved in the violations charged in the indictment for which the defendants assessed the money judgment solely liable. And what I want to highlight, I want to highlight a couple of problems. Speak up just a little. Oh, I'm sorry. Okay. I want to highlight a couple of problems that are in this forfeiture order, that are in the judgment. First of all, it appears that the district court accidentally was using language from the wrong statute instead of using language from 853. The court was using language from the money laundering statute and the accompanying criminal forfeiture statute for money laundering, which is 18 U.S.C. 982. For instance, the term that they're using here is value of the property involved. That's not used in 853, which is what the government said it was seeking forfeiture for. Mr. Thresholl, I thought in your brief you said there are two errors. One is what I think of as the honey-cut error, 853. Was it properly attributed to the defendant? And the second one is the 32.2 procedural error. Now you're saying, and maybe you briefed it, that there's a separate error having to do with statutory confusion? Well, it relates to the first argument I made with 853. On 853, I said that there were no findings under 853. I'm simply elaborating why there were probably not appropriate findings under 853. It appears that the district court may have conflated the statutes, and that's why there's not appropriate findings here in this case under 853. Okay. We'll hear what opposing counsel says about findings, but I mean, there was an extraordinary amount of attention as to who would be attributed certain dollar amounts, the house, the trailer. This is a very strange case of three brothers all involved in the same drug conspiracy, but the contention in response to the forfeiture inquiry is the three brothers were all doing their own independent drug organizations. So the image, I don't know if you were trial counsel, was it's one milkman who puts drugs, three little milk bottles, and they take them, and therefore you've got to disaggregate them. And I felt the government just came in at the end and said, in light of Honeycutt, we'll just divide the total amount by a third. Why isn't that a finding? Although it is a finding, it was not arrived correctly under Honeycutt. They didn't use any of the terms of art set forth in, or I mean, the statutory language in 853. They didn't say that it was obtained directly or indirectly. In fact, because Honeycutt had just come down, and if I remember, the district court said, boy, this is sort of, I don't know if it was strange or weird, which word did the judge use? I think it was strange. This is strange new law. Right. And then sort of abruptly at the end of the hearing, the thought is, well, let's just divide the total amount by a third. Right, right. And you're saying that's error because that isn't sufficient inquiry and finding? Is that your position? Well, it's a back of the envelope sort of calculation that doesn't follow Honeycutt appropriately. And what's your best circuit authority for that? We've had Honeycutt for a year or so. And the best circuit authority for that is the United States versus Bradley. And in that case, the Sixth Circuit remanded, saying that the district court should figure out the amount proportionate with the property Bradley actually acquired through the conspiracy. That's what you want, is you want to remand and just get it right. That's correct, Your Honor. That's correct, Your Honor. But then there was a little gotcha element in the brief, which is, well, we want to remand, but the government can't offer any new evidence. That seemed a little strange. Even if you prevail on Honeycutt, if Honeycutt was new law, and they've got an agent who can testify and do the divisibility just right, why would we remand, but our mandate would say, but you can't take any more evidence? It's just the guilty plea factual basis, the PSR, and the agent that's already testified. I don't understand. Is that your position or not? It is our position. Okay. That just seems strange. Why would we hamstring a district court like that? I can understand the argument that, yeah, because it's new law, Honeycutt is new law, that perhaps they should have it. Or just get it right. I mean, it's a complex conspiracy, but why? Mr. DeVallis's position is that they should have . . . Are you conceding that it's not prudent to issue a limited remand? In other words, to restrict the district court to the things that it can consider in making a determination about what the amount should be? No, we're not conceding that. What I would suggest is that Honeycutt had already been issued, and it was already the law of the land at the time that the sentencing hearing took place, and that they shouldn't be able to have a second bite of the apple by producing extra evidence to try to show what was directly or indirectly obtained by Mr. DeVallis personally. I think that . . . They've got evidence about the $5 million total, and they're thinking joint and several liability, and then along comes Honeycutt, tightens up an interpretation of 853. You've really got to attribute it to each person. What did they acquire? I'd love to have any . . . If you have any authority as to why, in remanding, you prevail, we say to them, but you can't hear anything new to do exactly that, that seems very artificial to me. Is there authority that says that? The only authority that I can point to the court to is the Fifth Circuit authority that was cited in the reply brief that Mr. DeVallis filed. And that's the best authority that I have. The 32.2 issue. Are you going to move to that? Yes, Your Honor. With regard to the 32.2 . . . I'm sorry. With regard to the 3553C1 issue, there are absolutely no reasons given at all for Senate . . . Okay, go ahead. . . . for placing the . . . for sentencing Mr. DeVallis as the court sentenced him to 235 months in prison on both counts. Because it was a spread of more than 24 months, as I explained in the briefs, there should have been an explanation. But in the sentencing transcript, there's no reason at all for why it was 235 months as opposed to lower in the sentencing range. And without any reasons, Mr. DeVallis cannot even challenge the reasoning of the district court's sentence in this case. And for that reason, he has suffered a substantial harm. And it impairs the perception of fairness for the district court to do it that way. It's a sentencing hearing, right? It was. Again, he's talking about his brothers are involved in it, and he even has his son involved in it? Yes, Your Honor. That's correct, Your Honor. But nonetheless, 3553C1 still requires a statement of reasons. Because after Booker, the standard is now whether the sentence is reasonable or not. There's no explanation of the reasons for the sentence of 235 months. And so Mr. DeVallis can't challenge on that basis. And it appears that the reason that Congress passed 3553C1 in the first place was to make sure that these sentences could be challenged if necessary. Now, as regards to the sentence, there was an oral pronouncement? There was an oral pronouncement, yes, Your Honor. Was there an objection? No objection. So we can see that it should be reviewed. Yes, Your Honor. Yes, Your Honor. I have the record excerpts right here. When I look through it, there's no evidence that the court attempted to link the facts to why the sentence should be at the higher end of the guidelines range. Just none. The court simply states, the district court simply stated, the court finds that the advisory guidelines are adequate and that a fair and reasonable sentence can be achieved with a sentence selected from within the advisory range. In other words, the district court simply presumed that she could sentence Mr. DeVallis at any point within that range. But district courts cannot do that. She gave no reasons for sentencing him to 235 months. And on top of that, she didn't follow the Fifth Circuit guidance which says that you have to link the facts to the sentence that's ultimately merited out. Right after, the district court states for us that she doesn't see any reason why she can't sentence him at any point within the range. The district court simply moves forward and says that it is the order and judgment of the court that the defendant, David DeVallis Sr., is hereby committed to the custody of the BOP to be in prison for a term of 235 months on both counts. More is necessary from the court in order for Mr. DeVallis to challenge this sentence and to evaluate it and for there to be an appearance of fairness when they're sentencing. Your Honor, Your Honors, I would like to conclude by simply circling back to the forfeiture issue and pointing out other irregularities. The order of money judgment which was entered by the district court over 90 days after the sentencing hearing, it appears that the order was trying to fix some of the errors that were in the judgment that was entered in September of 2018. The order of money judgment talks about, makes a finding, and this time actually does use the language of 853 and it says, identifies proceeds obtained. But then the order of money judgment that was issued 90 days later still misuses, uses the wrong language. Instead of using the language under 853, it uses the language from the forfeiture for money laundering. Your time's almost out. You haven't alleged consequences from a procedural error pertaining to a preliminary order. You haven't brought that up at all. Right? You remember that portion of your brief argument? That there was no preliminary order here, hence? Right. Hence, because there wasn't a preliminary hearing, Mr. DeVolos didn't have an opportunity to challenge the judge's forfeiture determinations before sentencing. Would you agree that our law says that we review that for plain error in light of him not objecting at sentencing when the whole forfeiture issue comes up? He doesn't say, wait, what happened to that preliminary order? Yes. Okay. So it's reviewed for plain error. And in light of that, if the primary purpose of that pre-sentencing order is to give him notice, the indictment gave him notice, the advisory gave him notice, the PSR gave him notice, the guilty plea, both parties agreed, let's put it off to sentencing, seems like that would be not rising to plain error if the notice was very substantial. Thank you. I can see that argument being made. Mr. DeVolos simply doesn't agree that's the proper outcome. Thank you, Your Honors. All right. Thank you, Counsel. Good morning. You may proceed. Thank you. Good morning. May it please the Court. Mary Nelda Valadez, representing the United States of America. I would like to emphasize today for the Court, as we've just ended almost on Mr. DeVolos' argument, that here, under the facts of this particular case, the appellant did not show that he was prejudiced by the lack of the Court entering a preliminary order of forfeiture. And as he has just stated, this Court should review that for plain error. And again, under these facts, he simply does not carry his burden of proof to show that there was plain error on these facts. Because the Court, as the Court has also related, basically all the steps of Rule 32.2, which is the procedural rule for what the steps a Court has to take to order a criminal forfeiture, those steps were substantially met by the District Court. But that's not what Rule 32.2 says, is it? I mean, it doesn't say this is what a Court should do or you can substantially meet the requirements under the rule via some other means. It says you follow the rule unless it's impractical. Isn't that what it says? That is correct, Your Honor. It is that part of, for example, that phrase... Well, he got noticed. The purpose of the rule is to give him notice, and he got the notice anyway. Actually, it's a twofold argument, Your Honor. It is that he received notice. But also, the record doesn't really speak as to whether or not it was impractical to order a preliminary order of forfeiture in advance, or for the Court to enter it in advance of sentencing. However, I did notice from the record itself the Court set a combined forfeiture and sentencing hearing to receive the evidence that the Court needed to make the findings of Rule 32.2, specifically to make the factual determination as to the specific property and the requisite nexus. She needed to receive evidence to do that and also the amount of the money judgment. She needed to receive... The District Court needed to receive evidence to do that. Is there any reference from the record that when the parties at the guilty plea stage agreed to defer determination, that at that point maybe it wasn't contradictory, and then by the time they got to sentencing, all of a sudden, the issue of forfeiture was more contradictory? I believe that is correct, Your Honor. And if the Court notes, there was a bench conference, a sealed bench conference, right before the beginning of this combined sentencing and forfeiture hearing where the Court was bringing up and the parties were bringing up the forfeiture issue and how the evidence would be obtained by the Court as to forfeiture. So I do believe that is a correct scenario that the Court dealt with below. But I would like to, again, emphasize to the Court, as you were saying, Judge, the Rule 32.2 is just basically a roadmap. Yes, it has a lot of steps, but, for example, the notice. And as the Court already observed, he did receive plenty of notice in multiple ways in this particular case. Also, the Court made those factual, the determination. There is a lot that's in dispute at the sentencing, right? The wife gets on the stand and says, the house is mine, no drugs ever from the house. They were always from the trailer. Then the agent gets on, and so a lot was happening at sentencing. And I suppose he didn't argue it today, but I suppose he would have said, some of this caught me by surprise. I didn't think they were going to go after the house. And I would say, Your Honor, if he made that argument, that would be disingenuous. Because at that point, he had pled guilty, and at the plea hearing, he contested the forfeiture and contested the drug quantity. But one of the first things at plea hearing was, and this is at the record, I believe, trying to get to the record site so that we do know where he said this. Record site pages 280 and 281. The defendant, quote, is personally responsible, end quote, for the drug trafficking activities out of 307 West Zapata. And then the case agent testimony, which is at records 298 through 319, and the PSR, which is also at record 439, 442. That address you've just given me, I'm assuming that includes the trailer on the property. It does, Your Honor. That was the point of confusion. Yes, and I do understand that, Your Honor. There was confusion as to the properties. However, I believe the evidence that the case agent gave at the time that he testified at this combined forfeiture and sentencing hearing where he stated there was daily interaction between the defendant Davalos... He's the Weiss house? Just because he goes in and out of the house before he gets to his drug-dealing crack house trailer. That and the additional facts that the agent testified to at the time, which was that the defendant, for example, at his personal residence, which the address was 310 West Zapata, across the street. Yes, it is, Your Honor. But is the government seizing the house? The 310 West Zapata is the house sought for forfeiture, the residence, not the trailer, which is referred to as the crack house. And on record pages 300 to 305, the agent testifies as to the use of 310 West Zapata in the commission of the offense. Okay, let me be specific then, because in the commission sounds sort of vague. Did the agent ever say drugs were sold out of the 310? No, he did not, Your Honor. And he did admit that he was asked, and he admitted. But what he said was, and what the court found, also at pages, I believe it's 359 through 360 of the record, she found the requisite nexus between this residence, 310 West Zapata, and the drug trafficking activities by Mr. Davalos. Since there was no trial, it would have to either be in the guilty plea, but everyone agrees guilty plea, they put it off, or unobjected to in the PSR, but then that gets contested. So it's really going to have to come from the agent, because that was the only witness. And the agent gave... The agent says, I never saw drugs in and out of that house. So what's the case that supports a nexus finding when the drugs were never sold? The guy was maybe careful. He dug it all through his trailer. That's basically the underlying factor, but... What's the case that says you can still have the nexus because you go in and out of your house to sleep and eat?  That is what I would say, Your Honor, are the facts that the agent testified to. He testified further. The defendant in 310 West Zapata had a surveillance system, an electronic surveillance system facing the crack house so he could monitor his bedroom, the way the house was situated, watched and could see everything that was happening. So the surveillance system from the house covered the crack house trailer and that catches the house? Yes, it did, Your Honor. Would it ever sort of say that? And did you have any authority, case law? That seems a little attenuated. And I believe, Your Honor, that the entire aggregate of these facts show the use of 310 West Zapata in the commission of defense, show the nexus between this property and the offense. I'm going to jump. I'm sorry, you go. I'm just going to do one jump. Go ahead. I'll wait. If we have trouble with a honey-cut attribution amount and therefore, but we also don't think you're limited on remand, wouldn't there be value in getting the house nexus? Wouldn't that be... Why would we say to the district court we're going to affirm as to the house but not the money judgment? Why not allow the whole forfeiture thing? Would you have any difficulty with that? No, Your Honor. Actually, that is certainly a remedy that would be reasonable for this particular appellant. And I think that that is probably all that he really does, should get. Of course, the government is of the opinion that there are sufficient facts of the record and that he did not meet his burden of proof so that the court could already uphold the forfeiture. However, if the court does decide to do a remand for the court to have further factual support of both the money judgment and this particular nexus for the property sought for forfeiture and the offense, that is a remedy that is available to this appellant. And the government would agree that that is a possible remedy. Doesn't agree that it's necessary but would agree that that is a possible remedy here. Again, I would stress for the court, however, that... And this court has actually visited in very similar factual scenario you're holding in the Marquez case that actually dealt with a forfeiture context and the same issue, the failure of the court to enter a preliminary order of forfeiture in advance of sentencing. The court here, this court found that under the plain error review that the appellant did not carry his burden of proof there because he received all the protections, all the rights that adequate due process has for notice and for the opportunity to challenge the forfeiture. And that is the case here very much so. And I would like to go one step further and say that here, this appellant did not show any prejudice to himself because he did not show how the results would be any different. He had a detailed factual evidentiary hearing where facts were received by the district court as to the use of that house, how it ties to his drug trafficking offenses, and how would that be any different at this point? We would be basically introducing the same testimony from the case agent, albeit maybe a little more expanded upon, but the facts would remain the same. Reading that transcript, it did seem like even the government hadn't really thought through Honeycutt. Remember how it comes up at the very end and they just say, let's divide it by three? I think that is correct, Your Honor. However, they were cognizant enough, at least the prosecutors at trial, to say we do have to make a distinction. And like I said, it goes all the way back to the plea hearing where they tried to say he was... And they did say this defendant... But you agree it now requires district court findings as to what was acquired. And even though the sentencing transcript's long, I don't see the district judge looping back at the end and saying this brother got this amount. She did not... The district court did not make findings as to the co-defendant brothers and what they were. She made a general finding of the entire amount, $5.9 million. However, at page 356 of the record, this court did say, I find that... As you referenced, she said it's very strange this new case has come out. Honeycutt, however, as to you, and she asks the prosecutor, is this jointly and several liability? The prosecutor responds clearly, no. This is what he is personally responsible for. Those findings wouldn't suffice in other circuits that have looked at this. Do you agree, the Sixth Circuit, the Tenth Circuit? It would be problematic. It would be problematic, Your Honor. However, I do believe that you can't look at this in just that vacuum. You have to look at it in the context of the hearing and all the evidence that the court had just received. The agent did do a specific calculation as to why this defendant's money judgment amount was reduced to $1.794 million from the $5.98, which was attributable to the entire conspiracy. And the support for that calculation came from his previous testimony as to all the facts that surrounded the drug trafficking activity. And it also came... The Brothers had one common supplier, cocaine coming in from Mexico? They had one common supplier. However, the agent also noted that this defendant's supplier was Jorge Rivera, co-defendant. And he made a point to say, this is where this defendant worked through that particular supplier, although they all had the conspiracy. So the number wasn't arrived at just by dividing the total by three? No, Your Honor, I do not believe it was. It was arrived by the agent testifying to the amount of kilograms of cocaine produced out of only 307 West Zapata, the crack house, as they refer to it sometimes in the record or the trailer, that was controlled by this appellant. They gave... He attributed the amount, the quantity. He attributed a dollar amount per kilogram, which at this point, they refer to it 26,000. They focused on the amount, the time length of the conspiracy, 46 months. And the agent took all those specific findings from their entire investigation where they were doing surveillance on the house, where they had a poll camera to see the activity, where they saw every 10 days, he was very specific to say, every 10 days this appellant met with Jorge Rivera, his source of supply, on the property sought for forfeiture. He would meet and they said the conclusion was they were either exchanging monies, the drug proceeds from the house, so that all of those factors go into his. The son, I believe, Your Honor, what his role was is to inform this appellant as to the presence of law enforcement. And there's a specific part of the transcript where he says there's a parade going on today. That was the son's language. And that the agents found out that that actually meant that there were, I think he also referenced, a lot of birds were around the area. The agents saw that as narcotics coded language for there's law enforcement presence around. So he would do things like that, activity like that. The son was in the house, not in the trailer? Or is that not that clear? No, Your Honor, the record is not clear as to where the son was when he would make those observations for this appellant. And since we're back to the house, my understanding is that the nexus to the house is just that there were surveillance cameras which offered a view of what was going on at the trailer. Is that it? Two different surveillance cameras, Your Honor. One put up by law enforcement, which is the poll camera, so they could watch that activity, but that the defendant, this defendant Davalos, had his own surveillance system in his house installed that was just focused on the trailer across the street, that he had daily interaction. They would see him walking every day back and forth between the trailer and this house. I guess I'm a little concerned because I have surveillance cameras at my house and I can see my neighbor's house across the street. So should I have that camera trained someplace else? No, Your Honor. I mean, it's going out from my yard but it's going across the street, so if my neighbor deals drugs, I could lose my house. I believe in the context that we're talking about, Your Honor, Mr. Davalos's intent was very much to have surveillance of that crack house or trailer because that is where he also delivered, the cocaine was delivered or other drugs, money was handled. He had a very specific purpose that could be reasonably inferred as to why he wanted his cameras directed that way. And I think that's fair to say from the facts of this particular case that that's a reasonable inference to make. And that testimony was also that the agents had surveillance on him and saw him, again, meeting with his co-defendants, the people that he directed. I believe he had five individuals attributed to him. Those individuals were known as the quote-unquote doormen of the trailer. Those were the people that actually conducted the drug transactions. So there was those types of facts in the record to show him and his daily interaction from his residence to that particular property, to show the nexus. Just help me out here. The government indicts and gives notices to forfeiture. Then there was a bill of particulars as to the forfeiture. Then there's the advisory as to the forfeiture. Then there's the missed preliminary order. Then the PSR. Then the sentencing. Lots of talk about forfeiture. J&C says forfeiture. Why do you need the December order? Why was there any subsequent order at all that's after he's noticed for appeal so then it gets a little tricky jurisdictionally as to can a district court clarify anything if the issue is already on appeal to us? The record isn't very clear about why that process was actually done and why they filed the orders in December as you noted, Judge. You say they. The government. I'm sorry. I wasn't part of that case. I usually distance myself when the issue gets complicated. You didn't do it, but they did it. Frankly, I just haven't dealt with forfeiture enough. That does seem problematic to use that word I like which is they've appealed the forfeiture issue in the judgment but then the government files to do what? I will say the one thing that that written preliminary order of forfeiture that was filed, tardy filing of that, does address two things. It addresses the defendant and everything that the court, it memorializes basically everything that the court found. I'm trying to clarify the honey cut issue which I don't blame someone for trying to do. The money judgment order may have done that but the preliminary order of forfeiture also goes to third parties, Your Honor. The third party issue was in that written preliminary order of forfeiture. It directed the government to send notice. It directed the government to publish. It directed the government to seize property and to discover it. Would she be deemed a third party? Yes, Your Honor, she is. And in fact that case, apparently that case is still pending because the wife's claim is there. So the ancillary proceedings are ongoing. In that case there's no final order. The word he used before was there were irregularities by virtue of the missed preliminary order. There was an irregularity I would say, Your Honor, in that he did not get the time The district court clearly didn't grant that as a Rule 35 or 36 correction. That is correct, Your Honor. The district court just got the government's motion and said this looks right. That is correct, Your Honor. How, if he disputed it, would he have to notice that for appeals separately? Or I slightly would have think that's a nullity because the district court had no jurisdiction to revise anything. So it is a nullity. Doesn't mean he wins if we remand for forfeiture. But I would have thought that whatever was done in December after the appeal is a legal nullity. If it pertains to an issue that's already before us on appeal. That's how I would have thought of it. Now, if you help me out with a case or any... What I would argue, Your Honor, is that the order, the preliminary order of forfeiture that was entered that late... No plain error. I'm with you on that. But then what about this December thing? How can that even be issued by the district court? The there were two different... The money judgment was December. The money judgment was December. The preliminary order was November. That's correct. That is correct. Aren't those both after the notice of appeal, though? They are, Your Honor. I'm just asking how... I didn't know that detail, but that is helpful. But how could a district judge issue either if they've already appealed forfeiture? That's my... I'm not saying it's determinative of this case. I just didn't understand the On that issue, Your Honor, I am not sure if I have the authority for how the district court could enter those orders. I will say I don't recall that that was one of the appellant's arguments. That's why I thought in his brief he gets into it must have been Rule 35. It must have been Rule 36. It must have been some sort of correction. And then, oh, no, 35's got a 14-day limit. 36 is just clerical. So why are they doing it? Exactly. I believe that the orders were entered by the court to memorialize the findings that she had previously made. And that was basically their effect. Thank you, Counsel. Thank you, Your Honor. Thank you. Rebuttal. Your Honors, I want to go back to specifically that $1.7 million forfeiture order. Although the government's position is that it may have been calculated correctly, it simply wasn't. Under Honeycutt, Mr. Devalos was a middleman. He was a middleman. And under Honeycutt, the middleman is not responsible for what his supplier  there is no evidence of the amount of money that was sent back to Mexico. There should have been such evidence under Honeycutt. In Honeycutt, they talked about the mastermind, the farmer mastermind. If he gets the money and sends it back to Mexico, he has acquired it. You don't subtract the profits from the guy at the top, do you? Yes. Under Honeycutt, for instance, in Honeycutt, they gave the following example. Suppose a farmer mastermind masterminds a scheme to grow, harvest, and distribute marijuana on local college campuses. The mastermind recruits a college student to deliver the packages and pays the student $300 a month from the distribution proceeds for services. And one year, the mastermind earns $3 million. So the supplier, he's responsible for all of it. But the student earns only $3,600. In other words, his commission. So they're not attributing just the commissions. Well, I guess, I mean, again, admittedly Honeycutt was new. District Court said it was strange. Maybe they'll have to go through it. This guy doesn't seem to be the college student who's just earning $3,000 or whatever. If the fact is this guy is funneling the $3 million back, he would have acquired the $3 million. But anyway, I'm just speculating. No. And I'm hearing that question, but I thought the magic word was obtain. And maybe acquire and obtain mean the same thing. What's your understanding of Honeycutt? Did he show that he obtained it? He acquired it? Or is there any difference? In Honeycutt, if they're just the Honeycutt court stands for the proposition that if they're just acting as a broker and just passing along the proceeds to the supplier, they don't obtain that. So you're answering his question is, does the language in the Supreme Court, is it obtain or is it acquire? I don't remember, but you're saying it's obtain. The statute says obtain directly or indirectly. And then while the Supreme Court goes through the decision, I mean it goes through the analysis, it looks at the definition of obtain and it sees that acquire is a definition for obtain. So 853 says obtain directly or indirectly. Look at the definition. Our court hasn't construed Honeycutt yet to your knowledge. That's correct. That's correct, Your Honor. The other thing too that's important to take note of is that as the government acknowledged, Mr. Davalos, as the PSR states, he had four people working for him. He didn't obtain directly or indirectly what went to his employees. So there should also be a deduction for what went to his employees. So what went to his supplier, he didn't obtain that directly or indirectly. What went to his employees, he didn't obtain that directly or indirectly. I'm curious. I guess we'll find this out. So as any circuit said, what you're saying that Honeycutt means, subtract out what the big guy gets, subtract out what all your employees get. So you, just in the middle, you get very little. That's, as any circuit really does. In the United States versus Bradley in the Sixth Circuit, they talk about that. They talk, and they remanded it for the district court to figure out an amount proportionate with the property Bradley actually acquired through the conspiracy. Although Bradley himself was a supervisor. The Sixth Circuit said... What about the house surveillance issue? Because we were both curious about that. If he in fact set his house up to have all the cameras on the crack trailer, sounds like a very sophisticated person that's trying to protect his house, but maybe was a little too clever. Do you think that's a fair statement of mine? If you're using the house to survey the trailer, then the government's going to get both. Possibly, yes. Possibly, yes. Okay. You don't want to concede things too quickly, just because I asked a question. Okay, okay. I don't know the answer. There has to be some fair... I would have to look at the record again. Okay. And then the notice is not good, by the way, because in the notice that was in the indictment and many of the other pleadings, again, they were trying to seek money under the money laundering statute instead of under 853. Thank you, Your Honors. Thank you, Counsel. We'll take this matter under advisement. We call the next...